UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
JAN 13 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JAN 14 2004

| | |
|---|---|
| Joanna Ciesielski, | ) |
| | ) Case No. 03 C 1175 |
| Plaintiff, | ) |
| | ) Honorable Amy J. St. Eve, |
| | ) Judge Presiding |
| v. | ) |
| | ) Judge Edward A. Bobrick, |
| Hooters of America, Inc., Hooters | ) Magistrate Judge. |
| on Higgins, Inc., Hooters Management | ) |
| Corporation, Inc, and various unknown | ) |
| employees of Hooters on Higgins, Inc. | ) |
| | ) |
| Defendants. | ) Jury Demanded |

## SECOND AMENDED COMPLAINT

NOW COMES the Plaintiff, Joanna Ciesielski, by and through her attorneys, John P. De Rose of John P. DeRose & Associates and Douglas P. Trent of the Law Offices of Trent & Butcher, and complains of Defendants, Hooters of America, Inc., Hooters on Higgins, Inc., Hooters Management Corporation, Inc., and various unknown employees of Hooters on Higgins, Inc., and in support of her complaint states as follows:

### JURISDICTION

1. The jurisdiction of this Honorable Court is invoked pursuant to Title VII, 42 U.S.C. § 2000 et seq. The matter in controversy exceeds the sum of $50,000 exclusive of interest and costs. The Court is also requested to exercise its supplemental jursidiction to hear pendant state claims under the same action.

### PARTIES

2. JOANNA CIESIELSKI, (sometimes hereinafter referred to as "Plaintiff"), a female, at all times relevant to this Complaint was an employee of Defendant, Hooters on Higgins, Inc.,

a resident of the State of Illinois, and a citizen of the United States of America.

3. HOOTERS OF AMERICA, INC, (sometimes hereinafter referred to as "Defendant Hooters of America") at all times relevant to this Complaint was a corporation licensed to do business in the State of Illinois.

4. HOOTERS ON HIGGINS, INC., (sometimes hereinafter referred to as "Defendant Hooters on Higgins"), at all times relevant to this Complaint was a corporation licensed to do business in the State of Illinois.

5. HOOTERS MANAGEMENT CORPORATION, INC., at all times relevant to this Complaint was a corporation licensed to do business and doing business in the State of Illinois and was the parent corporation of HOOTERS ON HIGGINS, INC., and was the employer of all management personnel responsible for the Hooters restaurant on Higgins.

6. VARIOUS UNKNOWN EMPLOYEES OF HOOTERS ON HIGGINS, INC., at all times relevant to this Compalaint are believed to have been citizens and residents of the State of Illinois and the United States and were employees of Hooters on Higgins, Inc.

7. The identities of the VARIOUS UNKNOWN EMPLOYEES OF HOOTERS ON HIGGINS, INC. are unknown at this time but can and will be ascertained during the discovery phase of the above-captioned cause, at which time Plaintiff will seasonably move the Honorable Court for leave to file a Second Amended Complaint properly identifying them.

## FACTS

8. Defendants Hooters of America and Hooters on Higgins required all of its female servers to wear a uniform consisting of short, tight-fitting shorts, pantyhose, and a tight-fitting t-

shirt.

9. The female servers are designated by Defendants and nationally advertised as "Hooters Girls".

10. The policy of Defendants Hooters of America, Hooters on Higgins, and Hooters Management Corporation, Inc., dictates that the female servers change into their required uniforms on site, in a changing room provided by the company.

11. A changing room was provided for the Hooters Girls to change into their tight fitting uniforms before commencing work and to change out of the uniforms at the completion of their respective tour of duty.

12. In or about December 2000, a female employee of Hooters on Higgins, Inc. discovered a peephole in the Hooters Girls changing room.

13. The female employee complained and informed Bill Moore, the District Manager of Hooters on Higgins, Inc. and Lisa Cooper, the General Manager of Hooters on Higgins, Inc., both employees of Hooters Management Corporation, Inc., about the peephole.

14. Defendants did nothing to timely repair the peepholes.

15. On or about April 27, 2001, Plaintiff was changing into her required uniform in the changing room when she heard people laughing.

16. The more clothing Plaintiff took off, the more the laughing increased.

17. Plaintiff sensed that she was being watched as she disrobed, but was unable to determine from whence the laughter was emanating.

18. When Plaintiff had changed from her uniform and had gone to the kitchen to say goodbye to the other employees of Defendants, she noticed that the male employees in the kitchen

were leering at her and making unwelcome sexual comments to and about her as she left for the day.

19. The wall into which the peephole had been placed was the common wall between the kitchen area and the female changing area of Hooters on Higgins, Inc.

20. Various unknown employees of Hooters on Higgins, Inc. (all reasonably believed to be male employees of the company) made the peepholes and watched the Plaintiff and other female employees while they disrobed and got into or out of Defendants' uniform.

21. On or about May 4, 2001, a female employee of Hooters on Higgins, Inc., noticed another employee gaping at her through a peephole in the wall of the changing room while she was changing into her uniform.

22. The female employee screamed out in protest of her discovery that she was being watched.

23. The female employee again immediately complained and informed the managers of Hooters on Higgins, Inc. and Hooters Management Corporation, Inc., about the peephole.

24. The female employee advised other female employees of Hooters on Higgins, Inc. about the peephole.

25. Plaintiff was violated and humiliated as other employees watching her undress while she changed into and out of Defendants' uniform.

26. Plaintiff and other female employees complained to management of Hooters on Higgins, Inc. and Hooters Management Corporation, Inc., and demanded that the walls of the changing room be repaired and the peepholes be destroyed.

27. Despite the protestations of Plaintiff and other female employees to Defendants, the walls

remained unrepaired and the peepholes remained uncovered.

28. Finally, in an attempt to protect their privacy and modesty, Plaintiff and other female employees of Hooters on Higgins, Inc. were forced to change into their uniforms in the public women's restroom.

29. Female customers of Hooters on Higgins, Inc. who entered the public women's restroom while Plaintiff and other female employees were in a state of disrobe while changing into or out of their Hooters uniform gave such disapproving looks causing Plaintiff additional humiliation and embarrassment.

30. In or about September 2001, Plaintiff again spoke to the manager of Hooters on Higgins, Inc. and Hooters Management Corporation, Inc., about covering up the peepholes in the changing room wall.

31. The manager of Hooters on Higgins, Inc. and Hooters Management Corporation, Inc., told Plaintiff to "leave a note" for the maintenance technician to make the repairs.

32. Four days later the maintenance technician covered the peepholes, commenting to Plaintiff that this was not the first time he had covered such peepholes in the walls of the female changing area.

33. In February 2002, Plaintiff noticed new peepholes in the changing room wall as she was undressing.

34. Plaintiff immediately complained to her supervisor at Hooters on Higgins and Hooters Management Corporation, Inc., about the peepholes.

35. Plaintiff demanded that something be done about the repeated recurrence of the peepholes in the female changing room walls.

36. Despite Plaintiff's protests, these new peepholes were not covered up until a month later.

37. After the peepholes were discovered, Plaintiff and other female servers were regularly and repeatedly subjected to degrading sexual comments and inappropriate touching by and from male employees of Defendants.

38. Despite repeated complaints from the female servers, Defendants' management failed to properly investigate the incidents, to prevent further peepholes from reappearing, and/or to discipline the male employees responsible for the sexually inappropriate activities.

39. Employee Managers of the Defendant would give preferential treatment to waitresses with whom they saw socially and, since Plaintiff refused to date any manager she was penalized in the terms and conditions of her employment.

40. On March 8, 2002, Plaintiff filed a charge of discrimination based on sexual harassment with the Equal Employment Opportunity Commission. (The Charge of Discrimination is attached hereto and made a part hereof as Exhibit "A").

41. A Right-to-Sue letter was issued by the Equal Employment Opportunity Commission to Plaintiff on June 18, 2002. (The Right-to-Sue letter See is attached hereto and made a part hereof as Exhibit "B").

## COUNT I
## SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

1-41. The Plaintiff repeats and realleges Paragraphs 1-41 of this Complaint as Paragraphs 1 through 41 of Count I as though fully set forth herein.

42. The Defendants have discriminated against and harassed Plaintiff on the basis of her sex in violation of Title VII.

43. The sexual harassment affected a term, condition or privilege of employment by giving preferential treatment to employees who succumbed to the manager's requests to see them socially and by creating an abusive work environment that has affected the Plaintiff's psychological and physical well-being.

44. Because of the sexual harassment, the Plaintiff has been subjected to psychological injury so severe, that no one reasonable person would be able to endure it.

45. The Plaintiff is now suffering and will continue to suffer irreparable injury and monetary damages as a result of the defendants' sexual harassment unless and until the Court grants relief.

WHEREFORE, the Plaintiff respectfully asks this Honorable Court to grant the following relief:

    A. Award the Plaintiff compensatory damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

    B. Award the Plaintiff reasonable attorney's fees and the costs of this suit; and

    C. Such other relief as this Honorable Court deems appropriate under the circumstances.

## COUNT II
## FAILURE TO SUPERVISE

1-45. The Plaintiff repeats and realleges Paragraphs 1-45 of this Complaint as Paragraphs 1 through 44 of Count II as though fully set forth herein.

46. Plaintiff had an expectation of privacy in the changing room provided by Defendants and did not desire nor encourage the creation and allowance of peepholes in the walls of the

female changing room.

47. Plaintiff's expectation of privacy has been violated by the aforementioned acts.

48. Defendants had a duty to supervise and instruct their employees in proper workplace conduct.

49. Defendants, through their supervisors and other members of management, were notified on numerous occasions that there were peepholes in the changing room walls.

50. Notwithstanding such repeated notifications and complaints, Defendants did little to timely investigate the holes, did nothing discipline those who created the peepholes, and took only grudging steps to repair the changing room walls and cover the peepholes.

51. Defendants callously and wilfully ignored the protestations of Plaintiff and other female employees of Hooters on Higgins, Inc. and did nothing to correct the sexually hostile and degrading environment in which they worked.

52. Plaintiff has been damaged by the aforementioned conduct of Defendants and each of them.

WHEREFORE, the Plaintiff respectfully asks this Honorable Court to grant the following relief:

A. Award the Plaintiff compensatory damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

B. Award the Plaintiff punitive damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

C. Award the Plaintiff reasonable attorney's fees and the costs of this suit; and

D.  Such other relief as this Honorable Court deems appropriate under the circumstances.

## COUNT III
## INVASION OF PRIVACY
## INTRUSION UPON THE SECLUSION OF ANOTHER

1-52. The Plaintiff repeats and realleges Paragraphs 1-52 of this Complaint as Paragraphs 1 through 52 of Count III as though fully set forth herein.

53. Defendants Hooters of America, Inc. and Hooters on Higgins, Inc., and Hooters Management Corporation, Inc., by and through their employees created peepholes in the female changing room allowing them to view Plaintiff in various states of undress.

54. Said viewing constitutes an unauthorized intrusion or prying into the Plaintiff's seclusion.

55. Said viewing was and is offensive and objectionable to Plaintiff and to any reasonable person.

56. Plaintiff and the other female employees of Defendants had a reasonable expectation of privacy with regard to their naked bodies.

57. Defendants' actions constituted an intrusion into matters which are private and personal to Plaintiff.

58. Said intrusion by the Defendants and their employees has caused and continues to cause great anguish and suffering to Plaintiff.

59. As a direct and proximate result of said unlawful, unauthorized, unjustified practices and disregard for Plaintiff's rights and sensibilities, Plaintiff has suffered the indignity

9

associated with such intrusion into her privacy and the invasion of her very personal right to be free to control the viewing of her naked image.

60. As a further direct and proximate result of said unlawful, unauthorized, and unjustified acts by Defendants and their employees, Plaintiff has suffered aggravation, extreme mental anguish, painful embarrassment among her friends and co-workers, damage to her good reputation, disruption of her personal life, and loss of enjoyment of the ordinary pleasures of everyday life.

WHEREFORE, the Plaintiff respectfully asks this Honorable Court to grant the following relief:

    A. Award the Plaintiff compensatory damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

    B. Award the Plaintiff punitive damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

    C. Award the Plaintiff reasonable attorney's fees and the costs associated with this suit; and

    D. Such other relief as this Honorable Court deems appropriate under the circumstances.

## COUNT IV
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1-60. The Plaintiff repeats and realleges Paragraphs 1-60 of this Complaint as Paragraphs 1 through 60 of Count IV as though fully set forth herein.

61. Defendants' conduct of intentionally harassing Plaintiff because of her sex was extreme

and outrageous.

62. The Defendants' conduct of refusing to properly investigate Plaintiff's sexual harassment allegation or to discipline her harassers or to stop such harassment was extreme and outrageous.

63. The Defendants' actions were intentional and the Defendants knew that there was a high probability that their conduct would cause severe emotional distress to Plaintiff.

64. Plaintiff has suffered severe emotional distress as a direct result of the Defendants' harassment and the wilful disregard of her claims.

WHEREFORE, Plaintiff respectfully asks this Honorable Court to grant the following relief:

    A. Award the Plaintiff compensatory damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

    B. Award the Plaintiff punitive damages against the Defendants, and each of them, in an amount in excess of $1,000,000.00;

    C. Award the Plaintiff reasonable attorney's fees and the costs associated with this suit; and

    D. Such other relief as this Court deems appropriate under the circumstances.

Respectfully submitted,

*John P. DeRose* (signature)

John P. DeRose

Douglas P. Trent
Law Offices of Trent & Butcher
350 South Schmale Road
Suite 130
Carol Stream, Illinois 60188
(630) 682-3554

John P. DeRose
John P. DeRose & Associates
15 Spinning Wheel Road
Suite 328
Hinsdale, Illinois 60521
(630) 920-1111

FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| JOANNA CIESIELSKI, | ) | Case No. 03 C 1175 |
| Plaintiff, | ) ) ) | Hon. Amy J. St. Eve, Judge Presiding. |
| v. | ) ) | |
| HOOTERS OF AMERICA, INC., HOOTERS ON HIGGINS, INC., and various UNKNOWN EMPLOYEES, of Hooters on Higgins, Inc., | ) ) ) ) ) | Magistrate Bobrick |
| Defendants. | ) ) | JURY DEMANDED |

## NOTICE OF FILING

DOCKETED
JAN 14 2004

To: Raymond R. Pesavento
Stone & Moore
30 North LaSalle, Suite 4300
Chicago, Illinois 60602

PLEASE TAKE NOTICE that on January 13, 2003, we caused to be filed with the United States District Court for the Northern District of Illinois, the attached PLAINTIFF'S SECOND AMENDED COMPLAINT, a copy of which is hereby served upon you.

Anthony T. Capua

## PROOF OF SERVICE

The undersigned, an attorney, on oath states that this Notice was served by mailing a copy to the above attorney(s) of record on January 13, 2004, with proper postage prepaid.

Anthony T. Capua

John P. DeRose & Associates
15 Spinning Wheel Road, Suite 328
Hinsdale, Illinois 60521
630-920-1111