Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1175 | **DATE** | 7/27/2004 |
| **CASE TITLE** | Ciesielski vs. Hooters | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due ______.

(3) ☐ Answer brief to motion due______. Reply to answer brief due______.

(4) ☐ Ruling/Hearing on ______ set for ______ at ______.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on ______ set for ______ at ______.

(7) ☐ Trial[set for/re-set for] on ______ at ______.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to ______ at ______.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Summary judgment is denied as to Count I and granted in favor of Hooters as to Counts II, III, and IV. All claims against the "various unknown Hooters employees" are dismissed.

Amy J St. E

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | Document Number |
| | No notices required. | | JUL 28 2004 | 61 |
| | Notices mailed by judge's staff. | | date docketed | |
| | Notified counsel by telephone. | | JMP | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | date mailed notice | |
| | Copy to judge/magistrate judge. | 2004 JUL 27 PM 4:13 | mailing deputy initials | |
| TH✓ | courtroom deputy's initials | Date/time received in central Clerk's Office | | |

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOANNA CIESIELSKI,<br><br>Plaintiff,<br><br>v.<br><br>HOOTERS OF AMERICA, INC., HOOTERS ON HIGGINS, INC., and various UNKNOWN EMPLOYEES, of Hooters on Higgins, Inc.,<br><br>Defendants. | ) | No. 03 C 1175 |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

Plaintiff Joanna Ciesielski filed a four-count complaint against Defendants Hooters of America, Inc., Hooters on Higgins, Inc., and various unknown employees of Hooters on Higgins, Inc. (collectively "Hooters"), alleging sexual harassment in violation of Title VII (Count I), failure to supervise (Count II), intrusion upon the seclusion of another (Count III), and intentional infliction of emotional distress (Count IV). Hooters moved for summary judgment on all counts. For the reasons stated herein, summary judgment is denied as to Count I and granted as to Counts II, III, and IV, and all claims against the "various unknown employees" are dismissed.

DOCKETED
JUL 2 8 2004

## LEGAL STANDARDS

### I. Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of

61

law." Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323, 106 S.Ct. 2548, 2552 (1986). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica*, 259. F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986)). A party will successfully oppose summary judgment only if it presents "definite, competent evidence to rebut the motion." *Equal Opportunity Comm'n v. Roebuck & Co.*, 233 F.3d 432, 437 (7th Cir. 2000). The Court "considers the evidentiary record in the light most favorable to the non-moving party, and draws all reasonable inferences in his favor." *Lesch v. Crown Cork & Seal Co.*, 282 F.3d 467, 471 (7th Cir. 2002).

## II. Local Rule 56.1

The Court first addresses both parties' failure to comply with Local Rule 56.1, which governs summary judgment briefing in the Northern District of Illinois. L.R. 56.1.

### A. The Parties' Failure To Cite To Their Rule 56.1 Statements

In their summary judgment briefs, both parties cited directly to the record rather than to their Rule 56.1 statements. This blatant violation of the Local Rules is improper. *Malec v. Sanford,* 191 F.R.D. 581, 586 (N.D. Ill. 2000) ("[c]itations in the fact section [of the memorandum of law] should be to the 56.1(a) or (b) statement of facts only," rather than to the record). Rather than striking the briefs, however, the Court scoured the record in an attempt to match the record citations in the briefs to the correct Rule 56.1 statements.

### B. Plaintiff's Failure to Properly Cite Supporting Evidence

Movants and respondents must adequately cite to the appropriate part of the record that supports their position. *See United States v. Dunkel,* 927 F.2d 955, 956 (7th Cir. 1991) ("Judges are not like pigs, hunting for truffles buried" in the record). Plaintiff has failed to cite any evidence supporting Additional Statement Nos. 88, 104, 136, and 138. Accordingly, the Court strikes these statements.

### C. Lack of Personal Knowledge And Reliance On Hearsay

Plaintiff improperly attempts to support Additional Statement No. 30 through the deposition testimony of a witness who lacks personal knowledge of the subject matter. The Court strikes this statement. *Federal Deposit Ins. Corp. v. Meyer,* 781 F.2d 1260, 1267 (7th Cir. 1986).

Plaintiff improperly relies on inadmissable hearsay to support Additional Statement Nos. 22 and 38-41. The Court strikes these statements. *See Winskunas v. Birnbaum,* 23 F.3d 1264, 1268 (7th Cir. 1994) (hearsay incapable of creating a genuine issue of material fact).

### D. Inclusion of Additional Information in Responses

Both parties submitted statements in their responses that include impermissible argument, conclusory statements, and additional, non-responsive information that belongs, if anywhere, in a separate Statement of Additional Facts pursuant to Local Rule 56.1(b)(3)(B); *McGuire v. United Parcel Serv.,* 152 F.3d 673, 675 (7th Cir. 1998). The Court disregards these additional facts in Plaintiff's Response Nos. 30, 53, and 56. Similarly, the Court disregards the additional information in Hooters's Response to Plaintiff's Additional Facts Nos. 23, 46, 49, 55, 62-63, 69, 91, 95, 97-98, 102-03, 109, 112-13, 115, 120, 141, 145-46, 154, 158, 162, 164, and 167.

### E. Previously Stricken Material

On January 28, 2004, the Court struck paragraphs 39 and 43 from Plaintiff's Second Amended Complaint ("SAC").[1] Paragraphs 39 and 43 alleged that Hooters Girls who dated their managers received preferential treatment. Plaintiff improperly included those allegations in her Response brief and in her Statement of Additional Facts. The Court strikes Plaintiff's Additional Statement Nos. 118, 121-125, 163, 202-205, and 207-209, because these statements relate solely to the stricken material.

## BACKGROUND

Defendant Hooters on Higgins, Inc., is a corporation licensed to do business in the State of Illinois. (R. 44-1, Def.'s Rule 56.1 Stmt. of Undisputed Material Facts ("Def.'s 56.1 Stmt.") ¶ 2; R. 52-1, Pl.'s Resp. to Def.'s Rule 56.1 Stmt ("Pl.'s 56.1 Resp.") ¶ 2.) Defendant Hooters Management Corporation, Inc. is a corporation licensed to do business in the State of Illinois and is the parent corporation of Hooter on Higgins, Inc. (*Id.* ¶ 3.) Plaintiff began working at Hooters on Higgins as a "Hooters Girl" on January 12, 1999. (*Id.* ¶ 5.)

## I. Touching and Comments By Plaintiff's Managers and Co-workers

Plaintiff's managers repeatedly made comments about Plaintiff's physical appearance that referred to particular parts of her body.[2] (R. 52-1, Pl.'s 56.1 Stmt. of Add'l Facts ("Pl.'s 56.1

---

[1] Pursuant to Federal Rule of Civil Procedure 15, Plaintiff sought leave from the Court to amend her complaint to add a defendant, which the Court granted. (R. 35-1, Minute Order.) In addition to adding a defendant, Plaintiff improperly added paragraphs 39 and 43 to her SAC. (R. 37-1, SAC ¶¶ 39, 43.) Hooters filed a motion to strike paragraphs 39 and 43 (R. 39-1, Mot. To Strike), which the Court granted. (R. 42-1, Minute Order.) Plaintiff did not subsequently seek leave to amend her complaint to add the stricken paragraphs.

[2] Hooters argues that the Court should limit the scope of Plaintiff's complaint to the specific facts alleged in her EEOC charge. In her EEOC charge, Plaintiff identified particular

Add'l Facts") ¶¶ 154-157, 164-172.) Although Plaintiff could not recall specific statements verbatim, she testified that her manager Jimmy Rabbitt commented that her breasts looked firm, her butt looked good, her breasts looked bigger, and asked whether she got "boob implants." (*Id.* ¶¶ 154-57.) Another manager, Clint Unrue, also made inappropriate comments to Plaintiff, such as referring to her as a "big titty ho." (*Id.* ¶ 164.) Managers Doug Gleischner and Arlen Chung also made offensive comments to Plaintiff (*Id.* ¶ 171), and Chung asked Plaintiff out on a date. (*Id.* ¶ 172.) Plaintiff complained to Rabbitt, Unrue, Gleischner, and Chung about their comments, but the comments continued.[3] (*Id.* ¶¶ 173-74.)

The kitchen staff also made unwanted comments to Plaintiff in Spanish and English regarding her physical appearance, and frequently accompanied those comments with whistling and other gestures. (*Id.* ¶¶ 187-88, 192, 194.) The parties dispute the frequency of these

---

facts in support of her hostile work environment claim: holes in the wall and the kitchen staff's degrading comments. In her SAC, Plaintiff alleged additional facts in support of her hostile work environment claim, including "degrading sexual comments and inappropriate touching by and from male employees." (R. 37-1, SAC ¶ 37.) Hooters denied these allegations in its Answer. (R. 40-1, Def.'s Answer to SAC ¶ 37.) Hooters did not object to paragraph 37 in its motion to strike. (R. 39-1, Mot. to Strike.)

Hooters now contends that Plaintiff's SAC improperly exceeds the scope of her EEOC charge and asks the Court to strike the allegations in paragraph 37 regarding the male employees' behavior (other than the kitchen staff's comments). The Court declines to do so. "[A] Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Cheek v. Western and Southern Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). In her EEOC charge, a plaintiff is required to exhaust her claims, not the evidence on which the plaintiff relies to establish the claim. *Kline v. City of Kansas City Fire Dep't*, 175 F.3d 660, 668 (8th Cir. 1999). Plaintiff asserts the same claim in her complaint that she asserted in her EEOC charge—a hostile work environment. Accordingly, the allegations in paragraph 37 do not exceed the scope of Plaintiff's EEOC charge. *See Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 690 (7th Cir. 2001).

[3] Whether Rabbitt, Unrue, Gleischner, and Chung made these comments is a credibility issue for a jury.

comments. (R. 44-1, Def.'s 56.1 Stmt. ¶ 53; R. 52-1, Pl.'s 56.1 Resp. ¶ 53.) Plaintiff complained to a manager that the kitchen staff was "touchy" and that they whistled at her as she picked up her food orders. (R. 52-1, Pl.'s 56.1 Add'l Facts ¶¶ 192, 198.) A member of the kitchen staff repeatedly attempted to touch Plaintiff's back or grab her arm or hand, and frequently asked her out on dates. (*Id.* ¶ 194.)

## II. The Changing Room Wall

When Plaintiff began working at Hooters, she and other Hooters Girls changed into and out of their work uniforms in the women's bathroom, which was open to the public. (R. 44-1, Def.'s 56.1 Stmt. ¶ 20; R. 52-1, Pl.'s 56.1 Resp. ¶ 20.) For the first two years of her employment, Plaintiff either changed in the women's bathroom or wore her uniform to work underneath her street clothes. (*Id.* ¶ 7.)

In December 2000, Hooters converted a storage room in the basement of the restaurant into a changing room where employees could change into and out of their uniforms. (*Id.* ¶ 21.) The changing room shared a common wall with a break room. (*Id.* ¶ 22.) Hooters furnished the break room with tables and chairs, and all employees used it. (*Id.*) Despite the installation of the changing room, most Hooters Girls continued to change in the women's bathroom. (*Id.* ¶ 23.)

### A. Peeping Through The Hole

On April 27, 2001, Plaintiff felt as though someone watched her as she undressed in the changing room. (*Id.* ¶ 24.) She had previously observed a hole in the changing room wall. (*Id.* ¶ 28.) Plaintiff did not actually see anyone watching her while she used the changing room. (*Id.* ¶ 25.) Plaintiff did not inform any manager about her April 27, 2001 experience. (*Id.* ¶ 26.)

Hooters General Manager Lisa Cooper examined the hole and concluded that no one

could see through the hole into the changing room. (*Id.* ¶ 32.) Cooper considered the hole nothing more than something that required maintenance. (*Id.* ¶ 33.) On July 21, 2001, George Kossikowski, a Hooters employee responsible for maintenance and repair work at ten Hooters locations, patched the holes with taping compound. (*Id.* ¶ 34.)

**B. The Appearance Of A Second Set Of Holes**

In late August or early September 2001, Plaintiff observed another set of holes in the changing room wall. (*Id.* ¶ 35.) Plaintiff complained about the new set of holes to Hooters's general manager. (*Id.* ¶ 36.) Hooters repaired the holes within four days. (*Id.* ¶ 37.) Plaintiff continued to change in the women's bathroom rather than the changing room. (*Id.* ¶ 35.) Plaintiff complained that using the women's bathroom rather than the changing room was inconvenient because she had to transport her personal articles to the women's bathroom and endure disapproving looks from female patrons in the bathroom. (*Id.* ¶ 36.)

**C. Plaintiff's Leave of Absence**

Plaintiff requested a leave of absence from Hooters near the end of September 2001. (*Id.* ¶ 38.) Because Plaintiff knew that Hooters's general policy prohibited the return of any employee leaving Hooters, she asked Cooper for reassurance that she could return as a Hooters Girl after her leave of absence. (*Id.* ¶ 39.) Cooper reassured Plaintiff that she could return. (*Id.* ¶ 40.)

**D. The Appearance Of A Third Set of Holes**

In January 2002, Plaintiff returned to Hooters and continued to use the women's bathroom to change into and out of her uniform. (*Id.* ¶ 42.) Plaintiff observed another set of holes in the changing room wall in February 2002, and complained to Cooper. (*Id.* ¶¶ 43, 44.)

On March 5, 2002, the Vice President of Operations for Hooters Management saw the hole. (*Id.* ¶ 45.) On March 6, 2002, Kossikowski installed paneling on both sides of the wall separating the changing room from the break room. (*Id.* ¶ 48.)

## III. Plaintiff's EEOC Charge And Departure From Hooters

On March 8, 2002, Plaintiff filed an EEOC charge. (R. 53-1, Ex. 4.) Plaintiff left Hooters in September 2002. (R. 52-1, Pl.'s 56.1 Resp. ¶ 222.)

## ANALYSIS

## I. Plaintiff's Hostile Work Environment Claim (Count I)

To prevail on her hostile work environment claim, Plaintiff must establish that: (1) she was subjected to unwelcome verbal or physical conduct of a sexual nature; (2) the conduct was severe or pervasive enough to create a hostile work environment; (3) the conduct was directed at her because of her sex; and (4) there is a basis for employer liability. *Hall v. Bodine Elec. Co.*, 276 F.3d 345, 355 (7th Cir. 2002). To qualify as "hostile," the work environment must be "both objectively and subjectively offensive." *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 505 (7th Cir. 2004). In deciding whether particular conduct creates an actionable hostile work environment, the fact finder examines the totality of the circumstances including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993).

Hooters does not dispute that Plaintiff was subjected to verbal or physical conduct of a sexual nature. Rather, Hooters argues that the conduct was not severe or pervasive enough to create a hostile work environment, and that there is no basis for employer liability.

### A. A Reasonable Jury Could Conclude That The Conduct Was Sufficiently Severe Or Pervasive To Create A Hostile Work Environment

Plaintiff bases her hostile work environment claim on (1) comments and touching by the kitchen staff; (2) comments and touching by her managers; and (3) the appearance and recurrence of holes in the changing room wall. A reasonable jury could find, based on the totality of the conduct, that the conduct was sufficiently severe and pervasive to create a hostile environment.

Plaintiff presented evidence that the kitchen staff made sexually degrading comments to her in both Spanish[4] and English. Plaintiff testified that when she walked by, "they would whistle, they would say stuff in Spanish." She said that they "whistl[ed] every time I go in the back of the kitchen, standing in groups and speaking Spanish and then laughing makes me feel like they are disrespecting me . . . ." Plaintiff testified that she endured these comments "daily."[5] Plaintiff further alleges that a member of the kitchen staff repeatedly touched Plaintiff's back or arm and asked her out on dates.

Plaintiff testified that certain managers also made degrading sexual comments to her, that she asked them to stop, and that the managers continued to make degrading comments.[6] Plaintiff

---

[4] Hooters argues that the Court should disregard the kitchen staff's comments because the kitchen staff made the majority of the comments in Spanish and Plaintiff does not speak Spanish. The Court disagrees. It is undisputed that, even though Plaintiff could not literally translate the Spanish comments, she subjectively understood the comments to be sexually degrading. A reasonable jury could find that the whistling and accompanying gestures were offensive in any language. *E.E.O.C. v. Cafe Acapulco, Inc.*, No. Civ. A. 3-98CV2302-P, 2000 WL 306054, at *3 (N.D. Tex. Mar. 23, 2000).

[5] Although the parties dispute the frequency of these comments, the Court makes reasonable inferences in the non-movant's favor on summary judgment.

[6] Whether the managers made these comments is a credibility issue for a jury.

further testified that a manager once threw a basketball at her rear end.[7]

Finally, Plaintiff argues that the appearance and presence of the holes in the changing room wall contributed to the hostile work environment. Plaintiff admits that she does not know whether someone in fact watched her on April 27, 2001, and that she does not know who created the holes. Plaintiff testified that she was very upset about Hooters's subsequent failure to prevent new holes from appearing, and about Hooters's unwillingness to investigate the incident in order to identify and punish the wrongdoer. Plaintiff was aware of the appearance and recurrence of the holes in the changing room wall, that she suspected that the holes were used for peeping purposes, and that she was upset that additional holes appeared after the original holes were patched. A reasonable jury could find that these circumstances contributed to a hostile work environment. *See Liberti v. Walt Disney World Co.*, 912 F. Supp. 1494, 1505 (M.D. Fla. 1995) (denying summary judgment as to hostile work environment claim where plaintiffs knew that holes existed in a dressing room wall and that additional holes appeared, and where plaintiffs did not know whether anyone actually peeped through the holes).

Taken as a whole, this conduct cannot be dismissed as mere boorishness, offhand

---

[7] Hooters argues that the managers' conduct did not alter the conditions of Plaintiff's employment because it did not "unreasonably interfere with [Plaintiff's] work performance." Hooters points out that Plaintiff had access to a peephole-free changing area (the public bathroom), that she continued to work at Hooters despite the ongoing alleged harassment, that she insisted upon returning to work as a Hooters Girl after her leave of absence, and that she merely complained that dressing in the bathroom was "inconvenient." Whether the conduct "unreasonably interfered with her work performance," however, is only one factor that the jury will consider when determining, based on the totality of the circumstances, whether the conduct created a hostile environment. *Harris*, 510 U.S. at 23. While a jury may ultimately find that these facts establish an affirmative defense as to employer liability in that Plaintiff may not have suffered a "tangible employment action" (*see* Section I.B.), the facts do not compel a grant of summary judgment.

comments, or isolated incidents. *See Faragher v. City of Raton,* 524 U.S. 775, 787, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). A reasonable jury could find that the conduct was severe or pervasive enough to create a hostile work environment.

### B. Plaintiff Has Established Sufficient Evidence of Employer Liability

The standard for employer liability turns on whether the alleged harasser was the plaintiff's supervisor or co-worker. *See, e.g., Faragher,* 524 U.S. at 787; *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 696-97 (7th Cir. 2001). Harassment by a supervisor triggers strict liability, subject to an affirmative defense that the plaintiff suffered no "tangible employment action." *See Parkins v. Civil Constrs. of Ill., Inc.,* 163 F.3d 1027, 1032 (7th Cir. 1998). Harassment by a co-worker leads to employer liability only where the plaintiff proves that the employer has "been negligent either in discovering or remedying the harassment." *Rhodes*, 359 F.3d at 505-06.

#### 1. Plaintiff's Managers

A plaintiff must show that the harasser served specifically as her supervisor for there to be an issue of material fact as to whether a "supervisor" harassed Plaintiff. *Rhodes*, 359 F.3d at 506. A supervisor is someone with the power to directly affect the terms and conditions of the plaintiff's employment. *Parkins*, 163 F.3d at 1034; *Hall,* 276 F.3d at 355. It is unclear whether Rabbitt, Unrue, Gleischner, and Chung are Plaintiff's "supervisors." Neither party addresses this issue. Instead, they focus on whether Hooters may be held liable for the alleged harassment by Plaintiff's co-workers.[8]

---

[8] The Court need not decide whether Rabbitt, Unrue, Gleischner, and Chung are Plaintiff's "supervisors," because to survive summary judgment, Plaintiff need only show a

### 2. Plaintiff's Co-workers

Plaintiff is entitled to reach a jury if she has competent evidence that Hooters was negligent either in discovering or remedying the harassment directed at her by her co-workers. *Hall,* 276 F.3d at 356. Hooters "will not be liable for the hostile environment absent proof that it failed to take appropriate remedial measures once apprised of the harassment." *Hostetler v. Quality Dining, Inc.*, 218 F.3d 798, 809 (7th Cir. 2000).

Plaintiff has presented evidence that she informed Hooters about the comments and touching by the kitchen staff and managers, and about the recurring holes in the changing room wall. *See Silk v. City of Chicago,* 194 F.3d 788, 807 (7th Cir. 1999). There is sufficient evidence that Hooters failed to take appropriate remedial measures in response to Plaintiff's complaints. As to the comments and touching by the kitchen staff and managers, a reasonable jury could find that Hooters's response was inadequate given Hooters's failure to identify and punish the individuals who made the comments,[9] and the fact that the comments continued. As to the holes in the changing room wall, a reasonable jury could find that Hooters's response was inadequate, given Hooters's failure to investigate and punish the persons responsible for creating the holes, and the fact that the holes kept reappearing. Making all inferences in Plaintiff's favor, there is a genuine issue as to whether Hooters was negligent in failing to take appropriate remedial steps

---

genuine issue as to any basis for employer liability.

[9] Hooters contends that it could not have investigated and punished the kitchen staff for their conduct because Plaintiff could not identify the kitchen staff by name. Plaintiff testified, however, that she identified two members of the kitchen staff by name, and that she could identify the others by appearance. Plaintiff contends that an investigation would not have been difficult given the relatively few, finite number of kitchen staff employees. The Court agrees.

once Plaintiff informed Hooters of the harassment. *See Haugerud*, 259 F.3d at 696-97. Accordingly, there is a genuine issue as to employer liability.

Summary judgment is denied as to Count I. A reasonable jury could conclude that Plaintiff was subjected to unwelcome verbal or physical conduct of a sexual nature, the conduct was severe or pervasive enough to create a hostile work environment, the conduct was directed at Plaintiff because of her sex, and there is a basis for employer liability.

## II. Plaintiff's State Law Tort Claims

Plaintiff asserts the following state law tort claims: negligent supervision (Count II); intrusion upon the seclusion of another (Count III); and intentional infliction of emotional distress (Count IV). The Court lacks subject matter jurisdiction over Plaintiff's state law tort claims because they are preempted by the Illinois Human Rights Act ("IHRA").[10] Accordingly, summary judgment is granted as to Counts II, III, and IV.

### A. The IHRA

The IHRA confines claims of civil rights violations under Illinois law to proceedings under the Act. *Jansen v. Packaging Corp. of America*, 123 F.3d 490, 493 (7th Cir. 1997). Sexual

[10] Hooters argues that Counts II-IV are preempted by the Illinois Workers' Compensation Act ("IWCA"). The Court disagrees. The IWCA does not bar a common law cause of action where the plaintiff can show that the injury was not "accidental." *Hunt-Golliday v. Metropolitan Water Reclamation Dist. of Greater Chicago*, 104 F.3d 1004, 1016 (7th Cir. 1997). "[I]njuries which the employer or its alter ego intentionally inflicts upon an employee or which were commanded or expressly authorized by the employer." are not "accidental." *Thomas v. Habitat Co.*, 312 F. Supp. 2d 887, 892 (N.D. Ill. 2002). A plaintiff can show that the injury was not "accidental" where the employer stands idly by rather than attempting to prevent known harassment. *Benitez v. KFC Nat'l Mgmt. Co.*, 305 Ill. App. 3d 1027, 1038, 714 N.E.2d 1002 (Ill. App. Ct. 1999). There is a genuine issue, however, as to whether Hooters took appropriate remedial measures once apprised of the harassment. (*See* Section I.B.2). Accordingly, the IWCA does not preempt Plaintiff's common law claims.

harassment is one of the civil rights violations specified within the IHRA, 775 ILCS 5/8-111(D), and the IHRA therefore preempts common law tort claims that depend on allegations identical to those supporting sexual harassment claims. *Id.* Whether the Court has jurisdiction over a common law tort claim depends upon whether the tort claim is "inextricably linked" to a civil rights violation such that there is no independent basis for the action apart from the act itself. *Geise v. Phoenix Co. of Chicago,* 159 Ill.2d 507, 515-19, 639 N.E.2d 1273, 1276-78 (1994).

### B. The IHRA Preempts Plaintiff's State Law Claims Against Hooters

To prevail on her negligent supervision claim (Count II), Plaintiff must establish that (1) Hooters had a duty to supervise its employees, (2) Hooters negligently supervised an employee, and (3) such negligence proximately caused Plaintiff's injuries. *Van Horne v. Muller,* 294 Ill. App. 3d 649, 691 N.E.2d 74, 79 (Ill. App. Ct. 1998). Plaintiff's negligent supervision claim is "inextricably linked" to her Title VII claim—both claims flow from the same set of facts. *Rushing v. United Airlines*, 919 F. Supp. 1101, 1112 (N.D. Ill. 1996). Plaintiff's negligent supervision claim is premised on her allegations of sexual harassment, such that if all of the sex-based conduct were removed from her negligent supervision claim, there would be no conduct on which to base this cause of action. *Cf. Poulos v. Village of Lindenhurst*, 2002 WL 31001876, at *15 (N.D. Ill. 2002). Accordingly, the IHRA preempts this claim. *Rushing*, 919 F. Supp. at 1112.

To prevail on her intrusion upon the seclusion of another claim (Count III), Plaintiff must establish (1) an unauthorized intrusion or prying into her seclusion; (2) that the intrusion was offensive or objectionable to a reasonable person; (3) that the matter upon which the intrusion occurs was private; and (4) that the intrusion caused anguish and suffering. *Melvin v. Burling,*

141 Ill. App. 3d 786 490 N.E.2d 1011, 1013-14 (Ill. App. Ct. 1986); *but see Lovgren v. Citizens First Nat'l Bank of Princeton,* 126 Ill.2d 411, 417-18 (1989) (noting possible conflict among appellate courts over existence of the tort). Again, Plaintiff's privacy claim is premised on her allegations of sexual harassment, and this claim is "inextricably linked" to her Title VII claim. Accordingly, the IHRA preempts Plaintiff's privacy claim against Hooters.

To prevail on her intentional infliction of emotional distress ("IIED") claim (Count IV), Plaintiff must establish that (1) the conduct involved is truly extreme and outrageous; (2) the actor either intended that his conduct inflict severe emotional distress or knew that there was at least a high probability that his conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 533 N.E.2d 806 (1988). Plaintiff's IIED claim is preempted by the IHRA because it is supported by the identical factual allegations of her Title VII claim, and when the allegations of hostile work environment are removed, she cannot establish an IIED claim.[11] *Jansen*, 123 F.3d at 493; *Thomas*, 213 F. Supp. 2d at 899.

## CONCLUSION

Because there is a genuine issue as to whether Plaintiff suffered a hostile work environment, summary judgment is denied as to Count I. Because Plaintiff's state law tort claims are "inextricably linked" to her Title VII claim, the IHRA preempts Plaintiff's state law

---

[11] To establish her IIED claim, Plaintiff relies on "Defendants' conduct of intentionally harassing Plaintiff because of her sex" and Defendants' "refus[al] to properly investigate Plaintiff's sexual harassment allegation or to discipline her harassers or to stop such harassment." (R. 37-1, SAC ¶¶ 61-62.) Plaintiff claims to have suffered "severe emotional distress as a direct result of the Defendants' harassment and the wilful disregard of her claims." (*Id.* ¶ 64.)

tort claims and summary judgment is granted as to Counts II, III, and IV. Finally, the Court dismisses all counts against the "various unknown employees of Hooters on Higgins."[12]

DATED: July 27, 2004

AMY J. ST. EVE
United States District Court Judge

[12] Although a plaintiff may bring suit against an unknown defendant and undertake discovery in order to identify the party who has injured her, *Duncan v. Duckworth*, 644 F.2d 653, 656 (7th Cir. 1981), a case cannot proceed to trial against an unknown defendant. *Pearson v. O'Leary*, No. 85 C 9323, 1995 WL 124123, at *4-5 (N.D. Ill. Mar. 20, 1995). In this case, Plaintiff has been unable to identify the "various unknown employees" after full discovery. As a consequence, Plaintiff has not served the unknown employees with summons, and the Court lacks jurisdiction over them. *Strauss v. City of Chicago*, 760 F.2d 765, 770 (7th Cir. 1985). Accordingly, the Court dismisses all claims against the unknown employees.